## Leon W. Clark *v.* Henry & Wright Manufacturing Company et al.

Maltbie, C. J., Brown, Dickenson, Baldwin and Alcorn. Js.

Argued January 6—decided March 7, 1950.

*Edward S. Pomeranz,* with whom was *William P. Aspell,* for the appellants (defendants).

*William S. Zeman,* with whom was *Harry Cooper,* for the appellee (plaintiff).

BALDWIN, J. The subordinate facts in this case are not in serious dispute. After corrections of the finding, as claimed by both parties, are made to the extent we find these claims supported by the record before us, the following facts appear: The plaintiff was employed by the defendant employer as an assembly worker in the so-called "roll feed" department. There, as a consequence of his exposure to oil, he contracted an industrial dermatitis of the hands and arms. Compensation for total incapacity was paid until May 24, 1948, under a voluntary agreement and thereafter, until July 19, 1948, under a finding and award which directed the plaintiff to take another job, at the same pay, which was offered by the defendant and which the plaintiff could do without being subject to conditions that might bring about a recurrence of the dermatitis. The plaintiff worked at this job, referred to as the "shed job"

or "dry job," until February 21, 1949, when his services were terminated owing to lack of work.

Under the seniority provisions of an agreement, dated August 10, 1948, between the defendant and the union representing the plaintiff, length of service would govern in all cases of layoff, rehiring, transfers or promotions, provided that the skill and industry of the employees were relatively equal. It was stated: "When there is the necessity of layoff in any one department . . . employees will be transferred to some other department if the Company finds it practicable to do so."

The plaintiff had seniority under this contract entitling him to transfer to his old job. At that time no vacancy existed in the old job. The plaintiff asserts that his seniority entitled him to have his old job made available to him even if another employee had to be discharged to create a vacancy. He asserts further that the employer refused him his old job because his susceptibility to dermatitis made him "physically unsuited" for this work. The commissioner found that the plaintiff was without employment, not because of a compensable injury, but because of business conditions, and denied further compensation. The plaintiff's appeal to the Superior Court was sustained and a judgment was entered directing an award of compensation for total incapacity, from which the defendants appealed.

We have said that the words "total incapacity to work" in General Statutes, § 7430, do not mean "the employee's inability to work at his customary calling, but the destruction of his capacity to earn in that or any other occupation which he can reasonably pursue." *Osterlund* v. *State*, 135 Conn. 498, 505, 66 A. 2d 363; see *Ferrara* v. *Clifton Wright Hat Co.*, 125 Conn. 140, 141, 3 A. 2d 842; *Reilley* v. *Carroll*, 110 Conn. 282, 286,

147 A. 818. "We cannot accept a claim of the plaintiff that his incapacity to work [in a particular occupation] would of itself show that he is totally disabled." *Osterlund* v. *State,* supra, 506.

The plaintiff points out that the old or so-called "roll feed job" should be available to him under the seniority rights of the union contract. That contract states that "employees will be transferred to some other department if the Company finds it practicable to do so." It can hardly be said to be practicable to transfer the plaintiff to his old job where, it is not disputed, there would be a recurrence of the dermatitis. Then, too, his return to the old job would have required the laying off of another employee.

The plaintiff did return to work in another job after the dermatitis had disappeared. The commissioner has found that his "earning capacity is the same as the one he enjoyed prior to his contracting the dermatitis." This finding the Superior Court did not and could not properly correct. After working for seven months on the job, the plaintiff was laid off owing to business conditions. Loss of employment or inability to secure work due to economic or general business conditions, even though one is incapacitated, furnishes no basis for an award of compensation. *Reilley* v. *Carroll,* supra, 286; *Ferrara* v. *Clifton Wright Hat Co.,* supra, 143; *Manley's Case,* 282 Mass. 38, 184 N. E. 372; *Plourde* v. *Auclair,* 86 N. H. 303, 167 A. 275; *Matter of Jordan* v. *Decorative Co.,* 230 N. Y. 522, 525, 130 N. E. 634; *Roller* v. *Warren,* 98 Vt. 514, 518, 129 A. 168.

The test of incapacity is not the employee's ability or disability because of his injury to do his old job but whether he could do another job and earn as much money. *Osterlund* v. *State,* supra, 505. It does not appear that the failure of the plaintiff to find other work which he is capable of doing is due to any inca-

pacity resulting from his injury. To require an employer to pay compensation for incapacity to do a specific job when the employee is capable of doing other work which he cannot get, not because of his incapacity due to injury but because of slackness of business conditions, would be going into the field of employment insurance rather than workmen's compensation. *Ferrara* v. *Clifton Wright Hat Co.*, supra, 143. The union contract cannot determine the plaintiff's capacity or lack of capacity to work. It can only secure his old job for him provided he is not incapacitated to do that job. If he has equal earning capacity in other work, but there is no other work because of business conditions, he is not totally incapacitated within the meaning of our statutes.

There is error, the judgment is set aside and the case is remanded to the Superior Court with direction to dismiss the appeal from the commissioner.

In this opinion the other judges concurred.