65 N.J. Super. 36 (1960)
166 A.2d 837
JOSEPH SILKE, PETITIONER-APPELLANT,
v.
HERBERT WALTER, D/B/A WALTER'S FURNITURE & REPAIR SHOP, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Union County Court, Law Division.
Decided December 6, 1960.
*38 Mr. William R. Gilson, for the petitioner-appellant (Messrs. Kentz, Kentz & Gilson, attorneys).
Mr. James A. Robottom, for the respondent-respondent (Mr. Donald J. Skeffington and Mr. Guy H. Haskins, Jr. on the briefs; Messrs. Skeffington, Haskins & Robottom, attorneys).
HOPKINS, J.C.C.
The petitioner appeals from a decision of the deputy director, dated October 15, 1959, denying his petition to reopen his case and seeking an award for increased permanent disability over and above that awarded to him by a decision of the Workmen's Compensation Division on September 13, 1955.
The petitioner first commenced working for the respondent in 1951 at the age of 61. Prior to that he had spent practically all of his working life in his own business of buying, repairing and selling antiques. His original work for the respondent was exclusively as a furniture repair man, but after a short period in this type of work during which his hands would be immersed in, or in contact with, paints, varnishes, shellac, paint and varnish removers and similar chemicals used in furniture repair, his hands developed a condition diagnosed as contact dermatitis. However, he continued in the employ of the respondent until December 3, 1953, when he left his employment for an ailment not related to his hand condition, and for which he was hospitalized until May 1954. Thereafter he filed a petition for temporary and permanent disability based on his hand condition. On September 13, 1955 an award was entered for 2-2/7 weeks of temporary disability and 5% partial permanent disability for residual contact dermatitis. From May 1954 until the award of September 1955 he remained in this area but sought no employment. In October of 1955, and following the award mentioned, to get away from the "freeze box" of the North, he moved permanently to Florida where, he then being aged 65, he has been living ever since on his *39 social security benefits and accumulated savings. He testified that he moved to Florida as a retired person but that he intended to open a woodworking shop of his own. He did not do this, nor did he attempt to secure employment in the buying or selling of antiques. As a matter of fact, he has never worked or sought employment there in any line of work.
In September of 1956, after about one year in Florida, he entered an adult public vocational school as a student, a retired person, and stated that it was his intention (never followed up) to file an application as a paid teacher. At the school he was engaged in making a wooden cupboard for his son under conditions, and in a room, where he again came in contact with woodworking chemicals. After about four weeks his hands again broke out with the dermatitis referred to, featured by festering, itchy sores. Prior to this, and following his severance of employment with the respondent, the petitioner's hands had cleared up and there had been no recurrence of his ailment.
On the advice of his attorney he consulted a dermatologist in Florida, not for any treatment, but merely for a report to be sent to his attorney, and on September 3, 1957 the present petition was filed alleging a worsening of the petitioner's condition and seeking an increase in the award for permanent disability.
After the second outbreak the petitioner treated himself with the same medication he had used in the North and his hands cleared up. He then returned to the school and spent an hour or so a day doing odd jobs. His hands did not break out again until about two weeks before he returned North in September 1958 for a hearing on his petition.
The petitioner in this case received an initial award in September 1955 of 5% partial permanent disability. The right of the court to make that award cannot be questioned. To justify an award of this nature, it is not necessary to show that the earnings of the petitioner have been impaired. *40 Where there is a work-connected loss of physical function which detracts from the former efficiency of the body or its members in the ordinary pursuits of life, compensation will be awarded even though there is no proof of present loss of earning power. De Zeng Standard Co. v. Pressey, 86 N.J.L. 469 (Sup. Ct. 1914), affirmed 88 N.J.L. 382 (E. & A. 1915); Burbage v. Lee, 87 N.J.L. 36 (Sup. Ct. 1915). The same reasoning applies to a compensable occupational disease. In Sutkowski v. Mutual Chemical Co., 115 N.J.L. 53 (Sup. Ct. 1935), partial permanent disability was awarded to an employee where there was no disablement  no interruption in the service given by the employee; and his earnings were in nowise affected. See also Calabria v. Liberty Mutual Ins. Co., 4 N.J. 64 (1950); Stepnowski v. Specific Pharmaceuticals, Inc., 18 N.J. Super. 495 (App. Div. 1952); Heidel v. Wallace & Tiernan, Inc., 37 N.J. Super. 522 (Cty. Ct. 1955), affirmed 21 N.J. 335 (1956).
Following the award in 1955 the petitioner sought no revision of the award nor did he, by appeal, question its correctness. The 1955 award was, therefore, final and binding upon the parties, subject only to the continued jurisdiction to modify or enlarge the award to accord with an after-occurring increase or diminution of the disability which flows from the established compensable injury. Tucker v. Frank J. Beltramo, Inc., 117 N.J.L. 72 (Sup. Ct. 1936), affirmed 118 N.J.L. 301 (E. & A. 1937); Cirillo v. United Engineers & Constructors, Inc., 121 N.J.L. 511 (E. & A. 1939). The present petition, filed under N.J.S.A. 34:15-27, alleges that the petitioner's incapacity or disability has substantially increased. It is clear, however, that a finding of such increase must be grounded upon the comparative condition and ability of the workman and, to prevail, must be supported by proofs which permit comparison. It must be predicated upon a comparison of two conditions, and opinion evidence of present disability based only upon existing physical or mental condition standing alone is not competent to sustain a finding on the relative *41 fact of an increase or a decrease in disability. Comparison is a sine qua non. Cirillo v. United Engineers & Constructors, Inc., supra.
Application of these principles requires a definition of "disability." Such a definition is supplied by Yeomans v. Jersey City, 27 N.J. 496 (1958), where the court said, at page 508:
"By so providing, [in N.J.S.A. 34:15-27], the Legislature has established a subsequent change in `incapacity' [disability] as the determining factor as to whether a prior award shall be increased or decreased. `Incapacity' in this context means inability to perform labor." (Emphasis supplied)
On this point, and with particular reference to the petitioner's general condition and ability to perform labor, Dr. Irving Shapiro, appearing on behalf of the petitioner, testified as follows:
"He appears to me to be an exceptionally vigorous, youthful * * * vigorous individual who certainly would be able to carry out a gainful employment, with no limitation, except for this unfortunate allergic dermatitis. He has full possession of his muscles, joints. He isn't afflicted with any disabling or disfiguring conditions, with the exception of this allergic reaction."
He further testified that if the petitioner were not to engage in an occupation in which he would be exposed to irritants that would affect his skin, his disability "might be very small," and no more than what he estimated it to be in 1955.
The petitioner himself testified that his hands are all right if he stays away from woodworking, and that "When I get my hands cleaned up they are as good as yours [referring to the hands of the deputy director]." This court is in agreement, therefore, with the finding of the Division, that no increase in the permanent disability of the petitioner due solely to the contact dermatitis has been established by the proofs. The ability of the petitioner to perform labor is expressly admitted, and there is no evidence to meet the *42 comparison test required by the Cirillo case, supra. Further, there is no testimony admeasuring any increase in terms of an after-occurring addition to the 5% permanent partial disability adjudicated by the earlier determination. Hopler v. Hill City Coal & Lumber Co., 5 N.J. 466 (1950).
Counsel for the petitioner, however, offers now the new theory, not presented at the first hearing, that the permanent disability, for which the petitioner seeks additional compensation and which his medical expert estimates at two-thirds of total, should be granted on the inability of the petitioner to follow the particular occupation, generally wood-working, which he has pursued his entire life, and because his present age prevents him from learning or following any other gainful occupation. He bases this on the alleged allergy to woodworking chemicals causally connected to his employment with the respondent.
To support the proposition, Dr. Shapiro, who had examined the petitioner and testified on his behalf in 1955, testified that as a result of his new examination and diagnosis he would estimate the petitioner's present permanent disability at two-thirds of total. He attributes this increase solely to the petitioner's limitation in occupation. He felt that because the petitioner had spent his lifetime in this field in a particular type of work that "this, of course, makes for a very marked disability." He further testified, "There is not a great deal wrong with his skin when he is away from exposure to these materials. However he is not trained in any other field, so * * * therefore * * * this * * * limits him very markedly." This testimony prevents the case from coming within the principle enunciated in Everhart v. Newark Cleaning & Dyeing Co., 119 N.J.L. 108 (E. & A. 1937), holding that compensation should be allowed where facial or other disfigurement prevents employability elsewhere.
The theory advanced would appear to be novel. The briefs of counsel fail to deal with the question and research by the court does not reveal any New Jersey case passing directly *43 upon the point. The normal rule is that disability is not tested by any particular occupation, and that, even in the case of a skilled craftsman, he will not be deemed totally disabled if unskilled or light work that he can perform is available to him. Larson, Workmen's Compensation, § 57.53.
Recourse to the decisions of other jurisdictions as a guide to the solution of the problem here presented reveals that other courts, either under the provisions of individual state statutes incorporating the "inability to perform labor" test set forth in Yeomans v. Jersey City, supra, or under a general application of the act, have held that the identity of the work which the petitioner is able to perform with that which he formerly performed is not essential. The test generally applied is whether there has been a decrease in the petitioner's capacity to earn wages in any line of work available to him and which he is reasonably qualified to perform. Pullman Co. v. Industrial Commission, 356 Ill. 43, 189 N.E. 874 (Sup. Ct. 1934); Postal Telegraph Cable Co. v. Industrial Commission, 345 Ill. 349, 178 N.E. 187 (Sup. Ct. 1931); Frennier's Case, 318 Mass. 635, 63 N.E.2d 461 (Sup. Jud. Ct. 1945); Federal Underwriters Exchange v. Simpson, 137 S.W.2d 132 (Tex. Ct. Civ. App. 1940); Standard Surety & Casualty Co. of New York v. Sloan, 180 Tenn. 220, 173 S.W.2d 436, 149 A.L.R. 407 (Sup. Ct. 1943).
In Zeady v. Arms Textile Mfg. Co., 96 N.H. 328, 76 A.2d 512 (Sup. Ct. 1950), the employee claimed total disability because of a skin rash contracted while working as a spinner. The evidence disclosed she could work at other mills without difficulty. Total compensation was denied under a state statute stating that employee would be denied such unless disabled "for work at any gainful occupation."
In Clark v. Henry & Wright Mfg. Co., 136 Conn. 514, 72 A.2d 489 (Sup. Ct. Err. 1950) the employee contracted an industrial dermatitis as the result of exposure to oil used as a lubricant. In discussing the test of incapacity the court *44 declared that it was not the ability or disability of an employee to do his old job but whether he could secure gainful employment elsewhere. To the same effect see In re Mastrogiovanni's Case, 332 Mass. 228, 124 N.E.2d 246, (Sup. Jud. Ct. 1955).
Bearing in mind the general propositions that the Workman's Compensation Act is to be liberally construed and that the purpose of such legislation is that the cost of all industrial accidents should be borne by the consumer as a part of the cost of the product, this court is of the opinion that the test of such theory should be the same as that mentioned by Judge Conford in his opinion in Marcus v. Eastern Agricultural Ass'n, Inc., 58 N.J. Super. 584 (App. Div. 1959), 32 N.J. 460. Following and paraphrasing the language used in that decision the test must be essentially an economic and functional one, and the determinative factor the extent of the economic dependence of the worker upon the particular occupation in which he has been trained and in which he may have spent his entire working life. It is not difficult to conceive a factual situation in which the application of such test would adequately demonstrate the employee's economic and functional dependence. However, such a situation does not obtain here. The petitioner is an able-bodied man in full possession of all his faculties at a standard perhaps well beyond that to be expected of one of his age. His own medical expert testified he was fully able to meet and perform any number of jobs available to a person of his age. No proof has been offered by the petitioner that he has made reasonable efforts to secure any such employment, nor is there any evidence of his economic dependence upon his previous occupation. On the contrary, this court is in agreement with the finding of the deputy director that the petitioner has voluntarily retired from the employment market.
The judgment of the deputy director is affirmed for the reasons stated.